## Helfrich *versus* The Commonwealth.

The offence of adultery consists in sexual intercourse by a married person with any one not his or her wife or husband; and, therefore, a married man may be guilty of adultery by carnal intercourse with a single woman.

In an indictment for adultery, it is sufficient to state that the defendant, having a wife, M. A. H., in full life, did *commit adultery* with one M. M., without otherwise alleging carnal knowledge, and without averring that M. M. was not his wife.

ERROR to the Quarter Sessions of *Lehigh county*.

This was an indictment, in the court below, against Erasmus H. Helfrich, for adultery. The indictment was as follows:—

"*Lehigh County*, ss.            Of November Session 1858.

"The grand inquest of the Commonwealth of Pennsylvania, inquiring for the body of the county of Lehigh, upon their oaths and affirmations, respectively do present: that Erasmus H. Helfrich, late of the said county of Lehigh, yeoman, on the seventeenth day of July, in the year of our Lord one thousand eight hundred and fifty-eight, at the county aforesaid, and within the jurisdiction of this court, then and there being a married man and having a wife in full life, to wit, Mary Ann Helfrich, did commit adultery with a certain Matilda Moyer, then late of the same county; contrary to the form of the Act of Assembly in such case made and provided, and against the peace and dignity of the Commonwealth of Pennsylvania.

"And the inquest aforesaid, on their oaths and affirmations aforesaid, respectively do further present, that the said Erasmus H. Helfrich, heretofore, to wit, on the same day and year aforesaid, at the county aforesaid, and within the jurisdiction of this court, then and there being a married man and having a wife, to wit, Mary Ann Helfrich, in full life, did commit adultery with a

[Helfrich v. The Commonwealth.]

certain Matilda Meyers, then late of the same county; contrary to the form of the Act of Assembly in such case made and ·provided, and against the peace and dignity of the said Commonwealth."

The defendant having been convicted on this indictment, filed the following reasons in arrest of judgment:—

"That the indictment does not charge that the said defendant had carnal knowledge of the body of Matilda Meyers.

"That the indictment does not charge that the said defendant had carnal knowledge of the body of Matilda Moyer.

"That the indictment does not charge either that Matilda Moyer named in the first count, or Matilda Meyers named in the second count, was a married woman.

"That the indictment does not charge either that the said Matilda Moyer or the said Matilda Meyers was not the wife of the defendant."

The court below overruled the motion in arrest of judgment, and sentenced the defendant to pay a fine of $20, to undergo an imprisonment of six calendar months in the county jail, to pay the costs of prosecution, and stand committed, &c.    The defendant, thereupon, applied to this court to allow a writ of error, and the same having been granted, removed the cause to this court, and here assigned for error, that the court below erred in overruling the motion in arrest of judgment and entering judgment on the verdict.

*Reeder* and *Brown,* for the plaintiff in error, cited 1 *Hawk. P. C.* ch. 25, § 60; Rex v. Horne, *Cowp.* 683; 1 *Leach* 383; *Stark. Cr. Pl.* 73; United States v. Almeida, *Whart. Prec.* § 1061, n.; Commonwealth v. Corson, 1 *Am. L. J.* 315; Commonwealth v. Moore, 6 *Met.* 243; *Whart. Prec.* 168; *Lewis' Cr. L.* 31, 649; Commonwealth v. Dinkey, 5 *Harris* 129; *Davis' Prec.* 48; Commonwealth v. Miller, 2 *Pars.* 481; Clark's Case, 6 *Grat.* 675; *Whart. Cr. L.* 187; 1 *Holt P. C.* 632; *Co. Litt.* 137; 3 *Chit. Cr. L.* 812; 2 *Hawk. P. C.* ch. 25, § 56; 1 *Russ. on Cr.* 686; Harman v. Commonwealth, 12 *S. & R.* 70; State v. Glaze, 9 *Ala.* 283; *Lewis' Cr. L.* 41; *Wood's Inst.* 272; *Co. Litt.* 551; *Roll. Abr.* 295; 2 *Salk.* 552; 3 *Bl. Com.* 140; *Bac. Abr.* tit. Marriage, p. 569; *Bull. N. P.* b. 1, 26; 1 *Hume C. L.* 451; Commonwealth v. Calef, 10 *Mass.* 153; Commonwealth v. Call, 21 *Pick.* 510; *Coates' Eccl. Pr.* 269; Crewe v. Crewe, 3 *Hagg.* 128; State v. Lash, 1 *Harrison* 38; 2 *Swift's Syst.* 227; State v. Wallace, 9 *N. H.* 518; State v. Way, 6 *Verm.* 311; State v. Hinton, 6 *Ala.* 864; State v. Brunson, 2 *Bailey* 149; Anderson v. Commonwealth, 5 *Rand.* 627; Commonwealth v. Isaacs, 5 *Id.* 634; State v. Pearce, 2 *Blackf.* 318; Matchin v. Matchin, 6 *Barr* 337; 4 *Am. L. R.* 209.

[Helfrich *v.* The Commonwealth.]

*Marx* and *Maxwell*, for the Commonwealth, cited 1 *Chit. C. L.* 170; *Whart. Cr. L.* §§ 260, 285, 292, 299–304; *Bishop on Marriage and Divorce,* § 415; 1 *Bouv. L. D.* 76; Dinkey *v.* Commonwealth, 5 *Harris* 128; *Leach* 113; 1 *East C. L.* 447; *Read's Dig.* App. 440; Commonwealth *v.* Reardon, 6 *Cush.* 79; Respublica *v.* Roberts, 2 *Dall.* 124; 1 *Yeates* 6.

The opinion of the court was delivered by

LOWRIE, C. J.—We are not convinced by the learned argument of the defendant's counsel. Our statute of 1705 makes fornication and adultery punishable; but it does not define them. Why? Evidently because the words were so well understood that a definition was not thought of. They are also used without definition, in the act of the same year against incest: 1 *Smith's Laws* 26. And adultery is so used in the divorce laws of 1785 and 1815: 2 *Id.* 243; 6 *Id.* 287. It is almost defined, as to a married man, in the Act of 22d Feb. 1718, 1 *Id.* 100, where "live in adultery" is defined, "cohabit unlawfully with another woman." The same meaning is shown, when it is declared, that a husband, marrying on a false rumor of his wife's death, "shall not be liable to the pains of *adultery:*" 2 *Id.* 345.

Indeed, we understand the counsel as admitting that, long before the Act of 1705, through the ecclesiastical courts and otherwise, the words adultery and fornication had acquired a definite meaning, applying to acts of married and unmarried persons respectively; but they argue that this meaning is illegitimate, and had grown up improperly, so far as relates to the act of a married man with a single woman; and to prove this, they refer to the loose marriage relations, and to the low condition of woman, in ancient times.

Suppose we admit the change of meaning in the word; this does not prove that the change was improper. Virtue (*virtus*) once meant only manliness, and yet that falls far short of its legitimate meaning now. It is the law of language, to be always changing, and therefore change is not illegitimate.

But suppose the change was improper; that is not the question; nor whether it was introduced by Puritans or Mahomedans. Not legislation, but interpretation, is our business; not the correction of language, but the ascertainment and application of its meaning. What did the legislature mean by the word adultery? Or, as they have not defined it, what did it mean in common usage? We do not understand it to be questioned, that it meant sexual intercourse by a married person with any person not his or her wife or husband. We cannot doubt, that this was its meaning in common usage, when this law was passed. So the legislature must have used it, and so they have been always understood.

In describing the offence in an indictment, no greater particularity has heretofore been required than is found here, and this

[Helfrich v. The Commonwealth.]

ought to be enough to sustain this indictment. We do not think that more ought to be allowed, unless it might be in stating the place. " Commit adultery" does not merely imply, but expresses carnal knowledge, for that is its very meaning. Having carnal knowledge is but a euphemism of it.

It is not charged that Matilda Moyer was not his wife; but his wife is named by a different name as still alive, and no one can reasonably suppose that the wife and Matilda Moyer are not different persons.

Judgment affirmed and record remitted.